1

2

3

4

5

6

7

8                          IN THE UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10   JEREMY DIONNE,

11              Petitioner,                No. 2:10-CV-3362 MCE DAD

12        vs.

13   PEOPLE OF THE STATE OF
     CALIFORNIA, et al.,
14
                Respondent.               FINDINGS & RECOMMENDATIONS
15

16   _____/

17              Petitioner, a state prisoner, is proceeding pro se with a second amended petition

18   for a writ of habeas corpus filed pursuant to 28 U.S.C. § 2254.  Therein he challenges his 2008

19   judgment of conviction entered in the Placer County Superior Court on charges of assault,

20   battery, and false imprisonment.  In two separate grounds for relief, petitioner claims that

21   instructional errors at the sanity phase of his trial violated his constitutional rights.  After careful

22   consideration of the record and the applicable law, the undersigned will recommend that federal

23   habeas relief be denied.

24                               PROCEDURAL BACKGROUND

25              On August 23, 2007, the Placer County District Attorney filed an Information

26   charging petitioner in count one with the attempted first-degree murder of Jeremy Sheffield (Cal.

                                              1

Penal Code §§ 664, 187(a)), in count two with assault by means of force likely to produce great

bodily injury (Cal. Penal Code § 245(a)(1)), in count three with assault with the personal use of a

deadly weapon (Cal. Penal Code §§ 245(a)(1), 1192.7(c)(31)), in count four with battery

resulting in serious bodily injury (Cal. Penal Code §§ 243(d), 1192.7(c)(8)), and in count five

with false imprisonment by violence (Cal. Penal Code § 236).  (1 Clerk's Transcript ("CT") at

42-51.)

      The Information further alleged that petitioner personally inflicted great bodily

injury on the victim (Cal. Penal Code § 12022.7(a)) and used a deadly weapon in commission of

the offenses (Cal. Penal Code §§ 12022(b)(1), 1192.7(c)(23)).  Finally it was alleged in the

Information that petitioner had incurred ten prior serious or violent felony convictions for

sentencing enhancement purposes under California Penal Code §§ 667(a)(1), 667(b)-(I),

667.5(a)-(b) and 1170.12(a)-(d).  (Id. at 44-48.)

      Petitioner entered a dual plea of not guilty and not guilty by reason of insanity.  (1

CT at 171.)  A jury trial commenced and the jury found petitioner not guilty of count one,

attempted murder, but guilty on the remaining counts two through five.  (2 CT at 273-75.)  The

jury also found true the allegations that petitioner used a deadly weapon.  (Id. at 274.)  Petitioner

then admitted the ten prior convictions and waived trial on the sentencing enhancements

allegations brought under California Penal Code §§ 667(a)(1), 667(b)-(I), 667.5(a)-(b), and

1170.12(a)-(d).  (1 CT at 267.)  On the defense's motion, the trial court dismissed the great

bodily injury allegations.  (Id. at 267.)

      Immediately after the guilt phase of petitioner's trial, the jury heard arguments and

instruction  on the issue of sanity.  (2 CT at 275.)  After deliberating further, the jury found that

petitioner was legally sane when he committed the offenses in question.  (Id. at 355-56.)

      On August 14, 2008, the trial court sentenced petitioner to an aggregate term of 41

years to life in state prison calculated as follows:  25 years to life on count two; plus an additional

consecutive 15 years under § 667(a)(1) for three prior serious felonies; plus an additional

1  consecutive one year term for the section 12022(b)(1) deadly weapon enhancement on count two.

2  (Id. at 488-89.)  The court stayed an additional one year enhancement under § 667.5(b) and

3  stayed sentencing on counts three, four and five.  (Id. at 487-89.)

4          Petitioner appealed from the judgment of conviction to the California Court of

5  Appeal for the Third Appellate District.  (Resp't's Lodged Doc.[1] "LD" 1.)  On appeal respondent

6  conceded that the trial court should have stricken, not stayed, the one year sentencing

7  enhancement under § 667.5(b).  (LD 2 at 20-21.)  On April 22, 2010, the state appellate court

8  ordered the one year enhancement under § 667.5(b) stricken and affirmed the modified judgment

9  in all other respects.[2]  (LD 5 at 19-20.)

10         On June 2, 2010, petitioner filed a petition for review in the California Supreme

11 Court.  (LD 8.)  On July 14, 2010, the California Supreme Court denied review.  (LD 10.)

12                              FACTUAL BACKGROUND

13         The California Court of Appeal for the Third Appellate District summarized the

14 facts underlying petitioner's offenses in an unpublished memorandum and opinion on direct

15 appeal as follows:

16         Jeremy Sheffield met defendant in July 2006, when Sheffield was
           homeless and defendant invited him to stay in his room at Motel 6.
17         Starting in late January 2007, Sheffield began staying most nights
           in defendant's room, and for three weeks they got along fine.
18         Defendant told Sheffield that he "had a bipolar issue" and was
           given medications, but he did not like to take them.  Occasionally,
19         defendant would invite Sheffield to use methamphetamine with
           him.
20
           On the night of February 16, 2007, defendant, who appeared to be
21         very high on methamphetamine, asked Sheffield to leave the room.
           Sheffield complied and slept in the stairwell of the motel that
22         night.

23 /////

24  _____

25         [1]  See Notice of Filing Document in Paper (Dkt. No. 20).

26         [2]  Inexplicably, the amended abstract of judgment failed to comply with the court's order.
   (LD 7.)  Petitioner does not raise this issue in his pending federal habeas petition.

                                         3

The next morning, Sheffield was helping his friend, Leonard Hensley, another resident of the motel, install speakers in Hensley's car.  Defendant arrived in his vehicle with another person, and requested that Sheffield come to his room to talk. Defendant still appeared to be high, but was "a little more mellow."  He appeared distracted, as if something was on his mind.

Sheffield followed the two men into the motel rom and sat on the bed.  Defendant accused Sheffield of being a police officer, but Sheffield denied it.  At that point, the other man grabbed and restrained Sheffield, while defendant punched him repeatedly. Sheffield tried to fight back, but could not do much.

The other man left the room, while defendant continued the assault, with Sheffield trying vainly to fight back.  The fight ended abruptly.

Defendant told Sheffield to go wash his face, since it was bloodied and bruised.  After Sheffield did so, defendant offered him a cigarette and the two smoked together.  Defendant then removed the belt out of his waistband and Sheffield felt something was not quite right.  Sheffield tried to leave the room, but defendant pushed the door shut.  Defendant then began strangling Sheffield with the belt.  Sheffield was unable to breathe and passed out.

Hearing the commotion, Hensley and a friend came upstairs and found the belt outside the room.  The two men then transported Sheffield to the hospital.

Sheffield was treated at the emergency room.  He was semiconscious, and had ligature marks on his neck.  He also had abrasions about his upper torso, cheek bones and mouth area.  One eye was red and slightly swollen.  He was released that afternoon.

Defendant fled after the incident, but soon returned to the motel, where he was arrested.

(LD 5 at 2-4.)

## ANALYSIS

### I.  Standards of Review Applicable to Habeas Corpus Claims

An application for a writ of habeas corpus by a person in custody under a judgment of a state court can be granted only for violations of the Constitution or laws of the United States.  28 U.S.C. § 2254(a).  A federal writ is not available for alleged error in the interpretation or application of state law.  See Wilson v. Corcoran, 562 U.S. ___, ___,131 S. Ct.

1   13, 16 (2010); <u>Estelle v. McGuire</u>, 502 U.S. 62, 67-68 (1991); <u>Park v. California</u>, 202 F.3d 1146,

2   1149 (9th Cir. 2000).

3          Title 28 U.S.C. § 2254(d) sets forth the following standards for granting federal

4   habeas corpus relief:

5          An application for a writ of habeas corpus on behalf of a
           person in custody pursuant to the judgment of a State court shall
6          not be granted with respect to any claim that was adjudicated on
           the merits in State court proceedings unless the adjudication of the
7          claim -

8          (1) resulted in a decision that was contrary to, or involved
           an unreasonable application of, clearly established Federal law, as
9          determined by the Supreme Court of the United States; or

10         (2) resulted in a decision that was based on an unreasonable
           determination of the facts in light of the evidence presented in the
11         State court proceeding.

12         For purposes of applying § 2254(d)(1), "clearly established federal law" consists

13   of holdings of the United States Supreme Court at the time of the state court decision.  <u>Stanley v.</u>

14   <u>Cullen</u>, 633 F.3d 852, 859 (9th Cir. 2011) (citing <u>Williams v. Taylor</u>, 529 U.S. 362, 405-06

15   (2000)).  Nonetheless, "circuit court precedent may be persuasive in determining what law is

16   clearly established and whether a state court applied that law unreasonably."  <u>Stanley</u>, 633 F.3d at

17   859 (quoting <u>Maxwell v. Roe</u>, 606 F.3d 561, 567 (9th Cir. 2010)).

18         A state court decision is "contrary to" clearly established federal law if it applies a

19   rule contradicting a holding of the Supreme Court or reaches a result different from Supreme

20   Court precedent on "materially indistinguishable" facts.  <u>Price v. Vincent</u>, 538 U.S. 634, 640

21   (2003).  Under the "unreasonable application" clause of § 2254(d)(1), a federal habeas court may

22   grant the writ if the state court identifies the correct governing legal principle from the Supreme

23   Court's decisions, but unreasonably applies that principle to the facts of the prisoner's case.[3]

24   _____

25        [3]  Under § 2254(d)(2), a state court decision based on a factual determination is not to be
     overturned on factual grounds unless it is "objectively unreasonable in light of the evidence
26   presented in the state court proceeding."  <u>Stanley</u>, 633 F.3d at 859 (quoting <u>Davis v. Woodford</u>,
     384 F.3d 628, 638 (9th Cir. 2004)).

1     Lockyer v. Andrade, 538 U.S. 63, 75 (2003); Williams, 529 U.S. at 413; Chia v. Cambra, 360

2     F.3d 997, 1002 (9th Cir. 2004).  In this regard, a federal habeas court "may not issue the writ

3     simply because that court concludes in its independent judgment that the relevant state-court

4     decision applied clearly established federal law erroneously or incorrectly.  Rather, that

5     application must also be unreasonable." Williams, 529 U.S. at 412.  See also Schriro v.

6     Landrigan, 550 U.S. 465, 473 (2007); Lockyer, 538 U.S. at 75 (it is "not enough that a federal

7     habeas court, in its independent review of the legal question, is left with a 'firm conviction' that

8     the state court was 'erroneous.'").  "A state court's determination that a claim lacks merit

9     precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of

10    the state court's decision." Harrington v. Richter,562 U.S.___, ___,131 S. Ct. 770, 786 (2011)

11    (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).  Accordingly, "[a]s a condition for

12    obtaining habeas corpus from a federal court, a state prisoner must show that the state court's

13    ruling on the claim being presented in federal court was so lacking in justification that there was

14    an error well understood and comprehended in existing law beyond any possibility for fairminded

15    disagreement." Harrington,131 S. Ct. at 786-87.

16         The court looks to the last reasoned state court decision as the basis for the state

17    court judgment.  Stanley, 633 F.3d at 859; Robinson v. Ignacio, 360 F.3d 1044, 1055 (9th Cir.

18    2004).  If the last reasoned state court decision adopts or substantially incorporates the reasoning

19    from a previous state court decision, this court may consider both decisions to ascertain the

20    reasoning of the last decision.  Edwards v. Lamarque, 475 F.3d 1121, 1126 (9th Cir. 2007) (en

21    banc).

22         "When a federal claim has been presented to a state court and the state court has

23    denied relief, it may be presumed that the state court adjudicated the claim on the merits in the

24    absence of any indication or state-law procedural principles to the contrary." Harrington, 131 S.

25    Ct. at 784-85.  "When a state court rejects a federal claim without expressly addressing that

26    claim, a federal habeas court presumes that the federal claim was adjudicated on the merits – but

that presumption can in some limited circumstances be rebutted." <u>Johnson v. Williams</u>,

___U.S.___,___,133 S. Ct. 1088, 1096 (2013).  "When the evidence leads very clearly to the

conclusion that a federal claim was inadvertently overlooked in state court, § 2254(d) entitles the

prisoner to" de novo review of the claim.  <u>Id.</u> at 1097; <u>Stanley</u>, 633 F.3d at 860; <u>Reynoso v.</u>

<u>Giurbino</u>, 462 F.3d 1099, 1109 (9th Cir. 2006); <u>Nulph v. Cook</u>, 333 F.3d 1052, 1056 (9th Cir.

2003).

        Where the state court reaches a decision on the merits but provides no reasoning

to support its conclusion, a federal habeas court independently reviews the record to determine

whether habeas corpus relief is available under § 2254(d).  <u>Stanley</u>, 633 F.3d at 860; <u>Himes v.</u>

<u>Thompson</u>, 336 F.3d 848, 853 (9th Cir. 2003).   "Independent review of the record is not de novo

review of the constitutional issue, but rather, the only method by which we can determine

whether a silent state court decision is objectively unreasonable."  <u>Himes</u>, 336 F.3d at 853.

Where no reasoned decision is available, the habeas petitioner still has the burden of "showing

there was no reasonable basis for the state court to deny relief."  <u>Harrington</u>, 131 S. Ct. at 784.

        In addition, when a state court's decision on the merits does not satisfy the criteria

set forth in § 2254(d), a federal habeas court conducts a de novo review of a habeas petitioner's

claims.  <u>Delgadillo v. Woodford</u>, 527 F.3d 919, 925 (9th Cir. 2008); <u>see</u> <u>also</u> <u>Frantz v. Hazey</u>,

533 F.3d 724, 735 (9th Cir. 2008) (en banc) ("[I]t is now clear both that we may not grant habeas

relief simply because of § 2254(d)(1) error and that, if there is such error, we must decide the

habeas petition by considering de novo the constitutional issues raised.").

II.  <u>Petitioner's Grounds for Relief</u>

        Petitioner presents two grounds for relief in his second amended petition pending

before this court.  Both claims challenge the jury instructions given at the sanity phase of his

trial.  The California Court of Appeal in its opinion affirming the judgment of conviction

provided the following background with respect to the sanity phase of petitioner's trial:

/////

**Background**

The defense presented evidence that defendant had spent time in Pelican Bay State Prison, where he had testified against a member of the Mexican Mafia, who was eventually convicted. The Mafia has a practice of eliminating witnesses who have testified against its members. After his testimony, there were threats against defendant and he expressed fear for his safety.

An attorney who assisted defendant in a parole violation case testified that she observed defendant a couple of days before the arrest. He acted paranoid, voicing fears that people were out to get him.

Defendant appeared confused and disoriented at the time of his arrest. Samples of defendant's blood and urine, taken shortly after his arrest, tested positive for methamphetamine and marijuana.

**Dr. Sokolov**

Dr. Gregory Sokolov testified on behalf of the defense. He diagnosed defendant with schizoaffective disorder, exacerbated by the use of methamphetamine. Sokolov opined that at the time of the offense defendant did not comprehend the nature and quality or the moral wrongness of his acts. When he committed the crime, defendant was in a psychotic and paranoid delusional state, but his mental disorder was a preexisting condition that was not caused by his use of controlled substances.

**Dr. Nelson**

Dr. Sidney Nelson, a forensic and clinical psychologist, testified for the prosecution. He was appointed by the court to evaluate defendant's sanity. Defendant told Nelson that he began injecting methamphetamine and smoking marijuana a week prior to the offense. The doctor believed that defendant did suffer psychotic-like symptoms on the date of the offense, but that his condition was entirely drug-induced and that he was exaggerating his symptoms.

Dr. Nelson administered the Millon Clinical Multiaxial Inventory (MCMI) test, but the computer rejected the results because defendant reported too many extreme symptoms, raising a red flag as to the reliability of defendant's information. Defendant was given the Miller Forensic Assessment of Symptoms test to assess malingering. Any score greater than 6 is indicative of malingering. Defendant scored a 15.

Dr. Nelson disagreed with Dr. Sokolov's diagnosis of schizoaffective disorder, believing that Dr. Sokolov did not take into

account defendant's significant history of drug abuse and failed to give
sufficient weight to defendant's malingering.

**Dr. Ebert**

Dr. Bruce Ebert, [a] court-appointed forensic and clinical
psychologist, evaluated defendant to determine his sanity. He
administered the MCMI test on defendant but did not obtain a valid
result, because defendant was reporting too many psychiatric
symptoms, "which would be virtually impossible to exist." Ebert
diagnosed defendant as having an antisocial personality disorder
with psychiatric features, accompanied by a severe case of
methamphetamine abuse. He "absolutely" disagreed with Dr.
Sokolov's diagnosis of schizoaffective disorder, finding no
evidence of it. He opined that defendant was sane at the time of
the offense, but under the influence of a "highly toxic drug" that
"explains all of his symptoms."

(LD 5 at 5-7.)

The trial court instructed the jury at petitioner's trial, in relevant part, with the

language of former CALCRIM No. 3450, as follows:

You have found the defendant guilty of assault with a deadly
weapon, assault by means of force likely to cause great bodily
injury, battery with serious bodily injury, felony false
imprisonment and personal use of a deadly weapon. Now you
must decide whether he was legally insane when he committed the
crimes.

The defendant must prove that it is more likely than not that he was
legally insane when he committed the crimes.

The defendant was legally insane if: [¶] 1. When he committed the
crimes, he had a mental disease or defect; [¶] AND [¶] 2. Because
of that disease or defect, he did not know or understand the nature
and quality of his act or did not know or understand that his act
was morally or legally wrong.

None of the following qualify as a mental disease or defect for
purposes of an insanity defense: Personality disorder, adjustment
disorder, seizure disorder, or an abnormality of personality or
character made apparent only by a series of criminal or antisocial
acts.

[. . . .][4]

---

[4]  With the concurrence of all counsel, the court excluded this first bracketed paragraph of
CALCRIM No. 3450, which, if included, would have instructed the jury:

[If the defendant suffered from a settled mental disease or defect caused by the long-term use of drugs or intoxicants, that settled mental disease or defect combined with another mental disease or defect may qualify as legal insanity. A settled mental disease or defect is one that remains after the effects of the drugs or intoxicants have worn off.][5]

You may consider any evidence that the defendant had a mental disease or defect before the commission of the crimes. If you are satisfied that he had a mental disease or defect before he committed the crimes, you may conclude that he suffered from the same condition when he committed the crimes. You must still decide whether that mental disease or defect constitutes legal insanity. [¶] . . . . [¶]

If you conclude that at times the defendant was legally sane and at other times the defendant was legally insane,[6] you must assume that he was legally sane when he committed the crimes. If you conclude that the defendant was legally sane at the time he committed the crimes, then it is no defense that he committed the crimes as a result of an uncontrollable or irresistible impulse.

If, after considering all of the evidence, all 12 of you conclude that the defendant has proved that it is more likely than not that he was legally insane when he committed the crimes, you must return a verdict of not guilty by reason of insanity.

(2 CT at 376; see also LD 5 at 7-9.)

/////

-------

[Special rules apply to an insanity defense involving drugs or alcohol. Addiction to or abuse of drugs or intoxicants, by itself, does not qualify as legal insanity. This is true even if the intoxicants cause organic brain damage or a settled mental disease or defect that lasts after the immediate effects of the intoxicants have worn off. Likewise, a temporary mental condition caused by the recent use of drugs or intoxicants is not legal insanity.]

(LD 5 at 9.)

[5] This court notes that after hearing the arguments of counsel, the trial court found that this second bracketed paragraph in CALCRIM 3450 was necessary and included it in the instruction as given to the jury at petitioner's trial. (CT at 1007-1016.)

[6] At this point in the trial transcript, the trial judge first incorrectly read the preceding word as "sane," but at defense counsel's request, immediately corrected this error and reread the sentence substituting the word "insane" so that the instruction as given correctly tracked the language of CALCRIM No. 3450.

10

1      B.  <u>Ground One:  Refusal of the Defense's Special Instruction 2</u>

2            Following a lengthy exchange on the record between counsel and the trial court

3 regarding the two bracketed paragraphs of CALCRIM No. 3450, during which the trial court

4 decided it was appropriate to omit the first bracketed paragraph and to include the second

5 bracketed paragraph in the final jury instruction(4 RT at 1005-1017), defense counsel proposed a

6 pinpoint instruction, Special Instruction No. 2, which read:

7               A person shall not be found to be legally insane when the sole or
                  only basis for the mental disease or mental defect is a personality
8               disorder, a seizure disorder, or an addition to, or abuse of,
                  intoxicating substances.  A person who has an Axis I mental
9               disease or defect which is aggravated by the abuse of an
                  intoxicating substance may be found legally insane.

10

11 (4 RT at 1017; LD 5 at 10.)  The trial court denied the defense request that their proposed Special

12 Instruction 2 be given, ruling that the concepts addressed therein were adequately covered by

13 CALCRIM No. 3450.  (<u>Id.</u>)

14            Petitioner now claims that the trial court's refusal of the defense request that the

15 proposed Special Instruction 2 be given violated his rights under the Fifth, Sixth and Fourteenth

16 Amendments.  In this regard, petitioner  argues that the special instruction proposed by the

17 defense correctly stated the law, pinpointed the defense theory of the case at the sanity phase of

18 the trial, and conveyed a critical legal concept not covered in the version of CALCRIM No. 3450

19 that was ultimately given to the jury . (Dkt. No. 9 at 7.)[7]  Respondent counters, first, that

20 petitioner failed to exhaust this claim in state court, and second, that the claim is without merit in

21 any event.  (Dkt. No. 19 at 15.)

22        1.  <u>Exhaustion</u>

23            The exhaustion of state court remedies is a prerequisite to the granting of a

24 petition for writ of habeas corpus by a federal court.  28 U.S.C. § 2254(b)(1); <u>see</u> <u>also Rhines v.</u>

25 ───────────────

26        [7] The court references the page numbers assigned by the court's CM/ECF system to the
pending second amended petition.

1  Weber, 544 U.S. 269, 273-74 (2005) (citing Rose v. Lundy, 455 U.S. 509, 518-19 (1982)); King

2  v. Ryan, 564 F.3d 1133, 1138 (9th Cir. 2009) ("Habeas petitioners have long been required to

3  adjudicate their claims in state court - that is, 'exhaust' them- before seeking relief in federal

4  court."); Farmer v. Baldwin, 497 F.3d 1050, 1053 (9th Cir. 2007) ("This so-called 'exhaustion

5  requirement' is intended to afford 'the state courts a meaningful opportunity to consider

6  allegations of legal error' before a federal habeas court may review a prisoner's claims.")

7  (quoting Vasquez v. Hillery, 474 U.S. 254, 257 (1986)).  The exhaustion requirement will not be

8  deemed to have been waived unless the state, through counsel, expressly waives the requirement.

9  28 U.S.C. § 2254(b)(3).[8]

10         A petitioner satisfies the exhaustion requirement by providing the highest state

11 court with a full and fair opportunity to consider all claims before presenting them to the federal

12 court.  See Baldwin v. Reese, 541 U.S. 27, 29 (2004); Picard v. Connor, 404 U.S. 270, 276

13 (1971); Wooten v. Kirkland, 540 F.3d 1019, 1025 (9th Cir. 2008).  Fair presentation requires the

14 petitioner to describe the operative facts and legal theory on which his claim is based.  Picard,

15 404 U.S. at 277-78; Wooten, 540 F.3d at 1025 ("Fair presentation requires that a state's highest

16 court has 'a fair opportunity to consider... and to correct [the] asserted constitutional defect.'").

17 "[F]or purposes of exhausting state remedies, a claim for relief in habeas corpus must include

18 reference to a specific federal constitutional guarantee, as well as a statement of the facts that

19 entitle the petitioner to relief."  Gentry v. Sinclair, 705 F.3d 884, 897 (9th Cir. 2013) (quoting

20 Gray v. Netherland, 518 U.S. 152, 162-63 (1996)).  See also Picard, 404 U.S. 270.

21         In the first issue addressed in his opening brief on appeal in state court, petitioner

22 argued that: "The trial court erred in failing to instruct the jury that a person who has a mental

23 disease or defect which is aggravated by the abuse of an intoxicating substance may be found

24 legally insane."  (LD 5 at 20.)  Specifically, petitioner asserted on appeal that the trial court's

25 _____

26         [8]  As will be discussed, an unexhausted claim may be denied on the merits.  28 U.S.C. §
2254(b)(2).

12

refusal to instruct his jury with the defense-requested Special Instruction 2 violated state law.  He

argued that his special requested instruction was a correct statement of the law, that the evidence

adduced at trial supported the giving of the instruction, that the trial court erred in failing to do

so, and that he suffered prejudice as a result.  (LD 1 at 22-27.)   In the eight pages of his opening

brief on appeal dedicated to this argument, however, petitioner did not make reference to a

specific federal constitutional guarantee (see Gray, 518 U.S. at 2081), and provided only the

following single reference to federal authority: "see also, Mathews v. United States (1988) 485

U.S. 58, 63." (LD 5 at 25.) This single reference to federal case law was provided in support of

the statement that "[i]t is generally recognized that a party has a right to have the jury instructed

on its theory of the case."  (Id.)

It was not until his petition for review filed to the California Supreme Court that

petitioner explicitly alleged that the trial court's refusal to given his proposed instruction

constituted a violation of his federal constitutional rights. (LD 8.)  In this regard, petitioner

claimed in ground one of his petition for review as follows:

> The due process, compulsory process and trial by jury clauses of
> the Fifth, Sixth and Fourteenth Amendments to the federal
> constitution mandate that a defendant is entitled to have the jury
> instructed on his theory of the defense.  (Mathews v. United States
> (1988) 485 U.S. 58, 63.)  United States v. Kenney [sic] (9th Cir.
> 1981) 645 F.2d 1323, 1337 [jury must be instructed as to the
> defense theory of the case"].)  The trial court's refusal to instruct
> the jury on petitioner's theory violated petitioner's federal
> constitutional rights.

(LD 8 at 8.)

Respondent now argues that petitioner's federal claim was not fairly presented to

the California Supreme Court because, under Rule 8.500(c)(1) of the California Rules of Court,

that Court will normally not consider an issue presented in a petition for review that was not

timely raised in the state appellate court.  (Dkt. No. 19 at 17.)  Therefore, respondent asserts, "the

[California Supreme Court's] policy. . . precluded review [of petitioner's federal claim] at that

juncture."  (Id. at 10.)

1    However, in People v. Randle, 35 Cal.4th 987 (2005), a case cited and relied upon

2  by respondent, the California Supreme Court explicitly decided to consider an issue that was not

3  previously raised in the appellate court, holding:

4           [T]his issue . . . was squarely raised in the Attorney General's
            petition for review, which we granted. *We may decide any issue*

5           *raised or fairly included in the petition* or answer.  (Cal. Rules of
            Court, rule 29(b)(1).)

6

7  Randle, 35 Cal.4th at 1001 (emphasis added).  Rule 29, referenced by the Randle court, has since

8  been renumbered as Rule 8.516, and provides:  "The Supreme Court may decide any issues that

9  are raised or fairly included in the petition or answer."  Cal. Rules of Court Rule 8.516(b)(1).

10  Accordingly, it does not appear that the California Supreme Court was necessarily precluded

11  from reviewing petitioner's federal claim which was raised in his petition for review filed with

12  that court.

13    Nonetheless, respondent has presented other persuasive authority for the

14  proposition that a habeas petitioner who seeks to challenge his California conviction on federal

15  constitutional grounds fails to satisfy the exhaustion requirement by presenting his federal claims

16  for the first and only time in state court in a petition for review filed with the California Supreme

17  Court.  See Castille v. Peoples, 489 U.S. 346, 350 (1989); Casey v. Moore, 386 F.3d 896, 915-18

18  (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005).  In Castille, the petitioner unsuccessfully

19  raised his federal claims for the first time in two "petitions for allocatur" filed in the

20  Pennsylvania Supreme Court.[9]  In that setting, the Supreme Court held that a habeas claim

21  remains unexhausted

22           where the claim has been presented for the first and only time in a
            procedural context in which its merits will not be considered unless

23           "there are special and important reasons therefor."  Raising the

24

_____

25      [9]  Under Pennsylvania law, allocatur review "is not a matter of right, but of sound

26  discretion, and an appeal will be allowed only when there are special and important reasons
    therefor."  Castille, 489 U.S. at 347 (quoting Pa. R. App. P. 1114).

                                                14

1          claim in such a fashion does not, for the relevant purpose,
          constitute "fair presentation."

2

3    <u>Castille</u>, 489 U.S. at 351 (internal citations omitted).

4          In <u>Casey</u>, the Ninth Circuit interpreted the decision in <u>Castille</u> to hold that a

5    habeas petitioner does not satisfy the exhaustion requirement by raising his federal claims for the

6    first and only time in a petition for discretionary review filed with a state supreme court.  <u>See</u>

7    <u>Casey</u>, 386 F.3d at 918 ("Because we conclude that Casey raised his federal constitutional claims

8    for the first and only time to the state's highest court on discretionary review, he did not fairly

9    present them.")  The holding in <u>Casey</u>, has been applied to federal habeas petitioner's in

10   California who presented their federal claims for the first time in state court in a petition for

11   review filed with the California Supreme Court.  <u>See</u> <u>Reynoso v. Lamarque</u>, No. Civ. S-03-0272

12   RRB EFB P, 2007 WL 707521, at *7 (E.D. Cal. Mar. 6, 2007); <u>see also</u> <u>Dixon v. Brown</u>, No. C

13   08-3725 RMW (PR), 2010 WL 1028720, at *3 (N.D. Cal. Mar. 18, 2009).  Accordingly, under

14   the holdings in <u>Castille</u> and <u>Casey</u>, petitioner's presentation of his federal claim for the first time

15   in his petition for review to the California Supreme Court did not serve to properly exhaust the

16   claim.[10]

17          2.  <u>Merits</u>

18          Nonetheless, even were petitioner's ground one claim found to be properly

19   exhausted, this court should deny federal habeas relief on the merits.  <u>See</u> 28 U.S.C. §

20   2254(b)(2).  In this regard, a district court may deny relief on an unexhausted claim on the merits

21   notwithstanding a petitioner's failure to exhaust available state court remedies when it is

22   perfectly clear that the claim is not "colorable."  <u>Cassett v. Stewart</u>, 406 F.3d 614, 624 (9th Cir.

23   /////

24

25          [10]  If a claim not presented to the lower courts on direct review is nevertheless expressly
     addressed by the state's highest court, that claim is considered exhausted.  <u>See</u> <u>Casey</u>, 386 F.3d at
26   916 n.18.  Here, however, the California Supreme Court summarily denied review without
     explanation or citation.  (LD 9.)

15

1    2005).  Here, petitioner's claim of error based on the trial court's refusal to instruct the jury with

2    the defense proposed Special Instruction 2 is not colorable.

3              Petitioner claims that he suffered from "a mental disease aggravated by his drug

4    usage at the time of the offense" and that he "presented evidence that he had schizoaffective

5    disorder rendering him unable to understand the nature and quality of his acts committed during

6    the offense."  (Dkt. No. 9 at 8.).  He alleges that CALCRIM 3450 instruction as given to the jury

7    was constitutionally deficient because it did not inform the jury that a finding of legal insanity

8    can be based on a mental disease aggravated by drug use in accordance with his theory of defense

9    at the sanity phase of the trial.  (Id. at 7).  Petitioner contends the trial court's refusal to instruct

10   the jury with Special Instruction 2 on the defense theory of the case violated his rights under the

11   "Due Process, Compulsory Process and Trial by Jury Clauses of the Fifth, Sixth and Fourteenth

12   Amendments[.]"  (Id. at 11.)

13             This court will not review the state court's rejection of petitioner's claim of jury

14   instruction error on state law grounds (LD 5 at 10-13) because a federal habeas relief is not

15   available for alleged error in the interpretation or application of state law.  See Wilson, 131 S. Ct.

16   at 16; Estelle, 502 U.S. at 67-68; Park, 202 F.3d at 1149; see also Mullaney v. Wilbur, 421 U.S.

17   684, 691 n.11 (1975) (federal courts will not review an interpretation by a state court of its own

18   laws unless that interpretation is clearly untenable and amounts to a subterfuge to avoid federal

19   review of a deprivation by the state of rights guaranteed by the Constitution).

20             In order for the trial court's alleged failure to instruct with Special Instruction 2 to

21   warrant federal habeas relief, petitioner must demonstrate that he suffered a violation of due

22   process.  See Estelle, 502 U.S. at 72 ("The only question for us is 'whether the ailing instruction

23   by itself so infected the entire trial that the resulting conviction violates due process.'") (quoting

24   Cupp v. Naughten, 414 U.S. 141, 147 (1973).  That is, in order for relief to issue, a challenged

25   jury instruction "cannot be merely 'undesirable, erroneous, or even "universally condemned,"

26   'but must violate some due process right guaranteed by the fourteenth amendment."  Cupp, 414

16

1  U.S. at 146.  See also Hendricks v. Vasquez, 974 F.2d 1099, 1106 (9th Cir. 1992).  The Due

2  Process Clause "safeguards not the meticulous observance of state procedural prescriptions, but

3  'the fundamental elements of fairness in a criminal trial.'"  Rivera v. Illinois, 556 U.S. 148, 158

4  (2009) (quoting Spencer v. Texas, 385 U.S. 554, 563-64 (1967)).  The Supreme Court has

5  defined 'very narrowly' the category of infractions that violate fundamental unfairness.  Dowling

6  v. United States, 493 U.S. 342, 352 (1990).

7          "Due process requires that . . . 'criminal defendants be afforded a meaningful

8  opportunity to present a complete defense.'"  Clark v. Brown, 450 F.3d 898, 904 (9th Cir. 2006)

9  (quoting California v. Trombetta, 467 U.S. 479, 485 (1984)).  The right to present a complete

10  defense additionally encompasses the right to adequate jury instructions on the defendant's

11  theory of the case.  See Clark, 450 F.3d at 904; Bradley v. Duncan, 315 F.3d 1091, 1098 (9th Cir.

12  2002) ("[T]he right to present a defense would be empty if it did not entail the further right to an

13  instruction that allowed the jury to consider the defense.") (internal quotation marks omitted));

14  Conde v. Henry, 198 F.3d 734, 739 (9th Cir. 2000) ("It is well established that a criminal

15  defendant is entitled to adequate instructions on the defense theory of the case.").

16          Here, the jury was adequately instructed on the defense's theory at the sanity

17  phase of petitioner's trial.  As the state appellate court held in finding no error under state law,

18  petitioner has no cause for complaint about the trial court's failure to give the first sentence of the

19  defense proposed Special Instruction No. 2, which read, "A person shall not be found to be

20  legally insane when the sole or only basis for the mental disease or defect is a personality

21  disorder, a seizure disorder, *or an addiction to, or abuse of, intoxicating substances*."  (LD 5 at

22  10 (italics added).)  With the exception of the reference to intoxicants, an identical concept was

23  conveyed to petitioner's jury by the giving of CALCRIM No. 3450, which instructed the jury:

24          None of the following qualify as a mental disease or defect for
           purposes of an insanity defense:  Personality disorder, adjustment
25          disorder, seizure disorder, or an abnormality of personality or
           character made apparent only by a series of criminal or antisocial
26          acts.

1   (2CT at 376.)

2   As to intoxicants, the state appellate court explained in its opinion as follows:

3           The italicized portion of Special Instruction No. 2 iterates the same
            concept contained in the [first] bracketed paragraph of CALCRIM
4           No. 3450, i.e., that a mental disease or defect caused solely by the
            use of intoxicants does not constitute insanity.  (See p. 9, *ante*.)
5           But, as noted, defense counsel agreed to *omit* the [first] bracketed
            paragraph, since all experts agreed defendant's abnormal mental
6           state was not caused *exclusively* by drug use.  (See People v.
            Robinson (1999) 72 Cal. App.4th 421, 429; see Bench Notes to
7           CALCRIM No. 3450 (Apr. 2008 rev.) p. 1019.)  Counsel's
            agreement had a plausible tactical purpose – the omission
8           obviously benefited [*sic*] defendant, who was high on
            methamphetamine at the time of the crime.  Since defendant
9           acquiesced to the omission, he may not now reverse course on
            appeal:  The doctrine of invited error applies to bar defendant from
10          pursuing the claim further.  (People v. Coffman and Marlow (2004)
            34 Cal.4th 1, 49.)

11
            The second sentence of proposed Special Instruction No. 2 told the
12          jury that an Axis I disorder aggravated by drug use may qualify as
            insanity.  The same concept is covered by that portion of the
13          CALCRIM No. 3450 instruction that told the jury that a settled
            mental disease caused by the use of intoxicants coupled with
14          another mental disease not so caused may qualify as insanity.[6]  "A
            defendant is not entitled to have the jury instructed in any
15          particular terms if the instruction given adequately conveys the
            correct rule of law."  (People v. Cox (1991) 53 Cal.3d 618, 674,
16          disapproved on different grounds in People v. Doolin (2009) 45
            Cal.4th 390, 421, fn. 22.)

17
            [Fn.6]   Defendant had no right to an instruction drawing attention
18                   to Dr. Sokolov's diagnosis that he had an "Axix I disorder."
                     An instruction that invites the jury to draw an inference
19                   favorable to one side from highlighted evidence may be
                     refused as improperly argumentative.  (People v. Earp
20                   (1999) 20 Cal.4th 826, 886.)

21   (LD 5 at 11-12.)

22          As explained by the state appellate court, the concepts in both sentences of

23   Special Instruction 2 as proposed by the defense at petitioner's trial were adequately covered by

24   the version of CALCRIM No. 3450 given to the jury, except as to the portion that stated the use

25   of intoxicants alone will not suffice to constitute legal insanity which petitioner's trial counsel

26   explicitly agreed to omit fro the instruction.  In closing argument, petitioner's trial counsel

1    expounded at length, with no objection from the prosecutor, upon the defense expert's testimony

2    that petitioner had a settled mental defect (schizoaffective disorder) which was exacerbated by

3    his use of methamphetamine.  (LD 5 at 12.)  Thus, as noted by the California Court of Appeal,

4    the defense was allowed free reign to explore the particular theme embraced by the rejected

5    defense instruction.  (Id. at 13.)

6                    For these reasons, it is clear that petitioner was afforded a meaningful opportunity

7    to present his theory of the defense, i.e. that he was legally insane at the time the crime was

8    committed.  Accordingly, due process was not violated.  See Clark, 450 F.3d at 904 (9th Cir.

9    2006) (state court's jury instructions violate due process if they deny the criminal defendant "a

10   meaningful opportunity to present a complete defense."); see also Duckett v. Godinez, 67 F.3d

11   734, 743-46 (9th Cir. 1995) (holding that due process does not require the trial court to instruct

12   on the defense's precise theory of the case where other instructions adequately cover the defense

13   theory).

14                   Additionally, in order to obtain federal habeas relief on this claim, petitioner

15   would have to "show that the alleged instructional error had substantial and injurious effect or

16   influence in determining the jury's verdict."  Byrd v. Lewis, 566 F.3d 855, 860 (9th Cir. 2009)

17   (internal quotations marks and citations omitted), cert. denied, ___U.S.___, 130 S. Ct. 2103

18   (2010).  See also  Brecht v. Abrahamson, 507 U.S. 619, 637 (1993).  "A substantial and injurious

19   effect means a reasonable probability that the jury would have arrived at a different verdict had

20   the instruction been given."  Byrd, 566 F.3d at 860 (internal quotation marks and citation

21   omitted).  Here, as noted above, CALCRIM No. 3450 adequately covered the legal concepts

22   addressed in the defense proposed Special Instruction 2 and petitioner's trial counsel was granted

23   full leeway to argue the defense theory of the case to the jury.  Accordingly, in this case there is

24   no reasonable probability of a different result had Special Instruction 2 been given as requested

25   by the defense.

26   /////

1     In sum, the trial court's rejection of the defense's proposed special instruction did

2  not render petitioner's trial fundamentally unfair in violation of due process and did not have

3  substantial and injurious effect or influence in determining the jury's verdict.  For all of these

4  reasons, petitioner is not entitled to federal habeas relief on ground one of his pending second

5  amended petition.

6     C.  Ground Two: Mandatory Presumption in CALCRIM No. 3450

7     Petitioner next claims that CALCRIM No. 3450 reflects an unconstitutional

8  mandatory presumption which improperly directed the jury's verdict at the sanity phase of his

9  trial in violation of his right to due process.  (Dkt. No. 9 at 11-14.)  Specifically, petitioner

10  challenges the following language contained in CALCRIM No. 3450:  "[I]f you conclude that at

11  times the defendant was legally sane and at other times the defendant was legally insane, you

12  *must assume* that he was legally sane when he committed the crimes."  (2CT at 376) (italics

13  added).

14     The Due Process Clause protects the accused against conviction except upon

15  proof beyond a reasonable doubt of every fact necessary to constitute the charged crime.  In re

16  Winship, 397 U.S. 358, 364 (1970).  Due process is violated by jury instructions that use

17  mandatory presumptions to relieve the prosecution's burden of proof on any element of the crime

18  charged.  Carella v. California, 491 U.S. 263, 265 (1989) ("Jury instructions relieving States of

19  [the prosecution's burden of proof on any element of the crime charged] violate a defendant's

20  due process rights."); Francis v. Franklin, 471 U.S. 307, 314 (1985); Sandstrom v. Montana, 442

21  U.S. 510, 520-24 (1979) (holding that due process was violated where an instruction contained

22  either a burden-shifting presumption or a conclusive presumption).

23     Presented with petitioner's claim that CALCRIM No. 3450 reflected an

24  unconstitutional mandatory presumption, the California Court of Appeal held that any error was

25  harmless under Chapman v. California, 386 U.S. 18 (1967), explaining as follows:

26  /////

20

In People v. Thomas (2007) 156 Cal. App.4th 304, a different panel of this court criticized the subject sentence, holding that, when viewed in isolation, it was potentially misleading. (Id. at pp. 309-310.) However, Thomas rejected the claim that the sentence imposed an impermissible presumption of guilt, concluding that the instruction was free from prejudicial error when CALCRIM No. 3450 is considered as a whole. (Thomas, at pp. 310-311.) Relying on Thomas, defendant claims the giving of the quoted sentence requires a new sanity phase trial because it "erroneously directed a verdict of sanity." While touting Thomas's criticism of the instruction, defendant invites us to reject Thomas's concomitant determination that its inclusion in CALCRIM No. 3450 does not create prejudicial error.

We agree that the sentence is problematic. It is common knowledge that even insane persons have lucid intervals, and the instruction appears to tell the jury that unless the defendant was continuously insane for some indeterminate period, they must presume he was sane at the time of the offense. That is clearly not the law, and it is perhaps for this reason that the sentence has been modified in subsequent versions of the instruction.[7]

> FN7    Unlike the version of CALCRIM No. 3450 that was given in Thomas, which told the jury that if defendant was sometimes sane and sometimes insane "you must assume" he was legally sane when he committed the crime, the present version of CALCRIM No. 3450, effective April 1 2008, now instructs that "you *must determine whether* [the defendant] was legally sane" at the time of the offense. (Italics added.)

Because the sentence appears to create an impermissible presumption that defendant is required to overcome, we disagree with Thomas to the extent it suggests that giving CALCRIM No. 3450 can *never* result in prejudicial error. A criminal jury instruction that creates an impermissible presumption is normally measured by the harmless-beyond-a-reasonable-doubt standard of Chapman v. California (1967) 386 U.S. 18, 24 [17 L.Ed.2d 705, 710-11]. (People v. Roder (1983) 33 Cal.3d 491, 504.)

That having been said, we find no prejudicial error under the facts of this case. Defendant does not dispute that CALCRIM No. 3450 correctly stated the law in all other respects. It told the jury that a settled mental disease or mental defect that prevented defendant from understanding the wrongfulness of his act could qualify as insanity. It also told the jury that if it found, after considering all of the evidence, that defendant was insane when he committed the crimes, it must return a verdict of not guilty by reason of insanity. Finally, the jury was instructed that when the evidence showed that defendant was at times sane and at other times insane, he had the

/////

burden of proving by a preponderance of the evidence that he was insane at the time of the crimes.

Moreover, the evidence of insanity in this case was weak.  Both of the court-appointed psychologists testified that defendant did not suffer from schizoaffective disorder and both noted significant clinical evidence that he was faking his symptoms.  Defendant's undisputed history of methamphetamine abuse and failure to report psychotic symptoms for at least a month after his arrest also strongly indicated that his "psychosis" on the date of the offense was drug-induced.

"[I]n the case of an erroneous presumption, '[t]he issue under Chapman is whether the jury *actually rested* its verdict on evidence establishing the presumed fact beyond a reasonable doubt, independently of the presumption.'" (People v. Flood (1998) 18 Cal.4th 470, 506, quoting Yates v. Evatt (1991) 500 U.S. 391, 404 [114 L.Ed.2d 432, 449].)  For all the foregoing reasons, we are satisfied that the jury's verdict did not rest on the misleading presumption contained in CALCRIM No. 3450.  The error was harmless beyond a reasonable doubt.

(LD 5 at 13-16.)

Respondent contends the state appellate court's harmless error analysis is entitled to deference under the AEDPA and that its rejection of the claim on this basis was neither an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented.  (Dkt. No. 19 at 31.)

Jury instructions containing erroneous presumptions are subject to harmless error analysis.  See Carella, 491 U.S. at 266 (mandatory conclusive presumption); Yates v. Evatt, 500 U.S. 391, 402-03 (1991) (mandatory rebuttable presumption), overruled on other grounds in Estelle, 502 U.S. at 72 n.4.  On federal habeas corpus review, the standard to be applied is whether the error had substantial and injurious effect or influence in determining the jury's verdict.  See Brecht, 507 U.S. at 637; Fry v. Pliler, 551 U.S. 112, 120 (2007).  Because the Brecht standard "obviously subsumes" the more liberal AEDPA/Chapman standard, the Ninth Circuit has held "we need not conduct an analysis under AEDPA of whether the state court's harmlessness determination on direct review . . . was contrary to or an unreasonable application of clearly established federal law."  Pulido v. Chrones, 629 F.3d 1007, 1012 (9th Cir. 2010)

1  (citing Fry, 551 U.S. at 120).  See also Ortiz v. Yates, 704 F.3d 1026, 1038 and n. 9 (9th Cir.

2  2012); Ayala v. Wong, 693 F.3d 945, 961 and n. 14 (9th Cir. 2012).  Instead, a federal habeas

3  court is to apply the Brecht test without regard for the state court's harmlessness determination.

4  Pulido, 629 F.3d at 1012 (citing Fry, 551 U.S. at 121-22); see also Merolillo v. Yates, 663 F.3d

5  444, 454-55 (9th Cir. 2011) (Applying "'the Brecht test without regard for the state court's

6  harmlessness determination.'")

7          The Supreme Court has explained that in the case of an unconstitutional

8  presumption, a reviewing court conducting a harmless error analysis  "must ask what evidence

9  the jury actually considered in reaching its verdict," and "then weigh the probative force of that

10  evidence as against the probative force of the presumption standing alone."  Yates, 500 U.S. at

11  404.  In addition, "[w]hen applying a harmless-error analysis in presumption cases . . . it is

12  crucial to ascertain from the trial court's instructions that the jurors, as reasonable persons, would

13  have considered the entire trial record," as opposed to only the presumption, "before looking to

14  that record to assess the significance of the erroneous presumption."  Id. at 406.

15          Here, as state appellate court noted, aside from the erroneous presumption, the

16  CALCRIM No. 3450 instruction as given to the jury at petitioner's trial correctly stated the law

17  in all other respects.  (LD 5 at 14-16.)  Importantly, the instruction accurately informed the jury:

18  (1) that a settled mental disease or defect that prevented petitioner from understanding the

19  wrongfulness of his act could qualify as insanity; (2) that if the jury found, after considering all of

20  the evidence, that petitioner was insane *when he committed the crimes*, the jury *must return a*

21  *verdict of not guilty by reason of insanity*; and, in contrast to the challenged portion of the

22  instruction, (3) that when the evidence showed that petitioner was at times sane and at other

23  times insane, *he had the burden of proving by a preponderance of the evidence that he was*

24  *insane at the time of the crime.*  (Id.)  The instructions as a whole made clear to the jury that it

25  was their job to evaluate the evidence and determine whether petitioner had proven he was

26  legally insane at the time of his offenses, notwithstanding the conflicting improper presumption.

23

1  Thus, reasonable jurors would have considered the entire trial record with regard to the issue of

2  sanity and would not have relied solely on the improper presumption without considering the

3  evidence in reaching their verdict on the issue of sanity.  See Yates, 500 U.S. 406.

4         In addition, this court notes that the potential importance of the  improper

5  presumption within the CALCRIM No. 3450 jury instruction was diminished by the bulk of the

6  evidence the jury had before it on the issue of petitioner's sanity.  In this regard, as noted by the

7  state appellate court, the evidence of petitioner's legal insanity was weak.  After his arrest,

8  petitioner was transported to the emergency room where samples of his blood and urine were

9  taken and tested positive for both methamphetamine and marijuana.  (LD 5 at 5.)  Although

10 petitioner reported to the emergency room doctor that he had suffered a seizure or seizures, tests

11 were inconclusive and the treating physician was unable to ascertain whether petitioner had

12 suffered a seizure.  (3 RT at 725, 737-38.)  Only the defense expert testified that petitioner

13 suffered from schizoaffective disorder exacerbated by the use of methamphetamine, while both

14 court-appointed psychologists strongly disagreed and opined instead that petitioner did not suffer

15 from schizoaffective disorder and that his reported symptoms appeared to be the result of

16 malingering.  (LD 5 at 15.)  Moreover, one of the court-appointed experts observed that

17 petitioner, who claimed he had blacked out on the day of his offense, had never before reported

18 blacking out or having a seizure.  (4 RT at 932-33.)  Even the defense expert, while opining that

19 petitioner did not understand the nature and quality of his acts, conceded that petitioner

20 understood the legal wrongfulness of his acts in fleeing the scene of the crimes and giving a false

21 alibi to the police.  (4 RT at 877.)

22        Based on the overall weight of the expert testimony and petitioner's undisputed

23 history of methamphetamine abuse, the force of the evidence that petitioner was legally sane at

24 the time of his commission of the crimes in question was so overwhelming that it cannot be said

25 that the erroneous presumption embodied in the jury instruction as given had substantial and

26 injurious effect or influence in determining the jury's verdict.  Instead, it appears that the jury's

24

1  verdict would have been the same in the absence of the improper presumption reflected in

2  CALCRIM No. 3450 as given.  Here, any jury instruction error was harmless under <u>Brecht</u>.

3  Accordingly, petitioner is not entitled to federal habeas relief on his ground two claim that the

4  giving of CALCRIM No. 3450, with its unconstitutional mandatory presumption, improperly

5  directed the jury's verdict at the sanity phase of his trial in violation of his right to due process.

6                                                        CONCLUSION

7              For the reasons set forth above, IT IS HEREBY RECOMMENDED that

8  petitioner's second amended petition for writ of habeas corpus (Dkt. No. 9) be DENIED.

9              These findings and recommendations are submitted to the United States District

10  Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within fourteen

11  days after being served with these findings and recommendations, any party may file written

12  objections with the court and serve a copy on all parties.  Such a document should be captioned

13  "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to the objections

14  shall be served and filed within fourteen days after service of the objections.  Failure to file

15  objections within the specified time may waive the right to appeal the District Court's order.

16  <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998); <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir.

17  1991).

18              In any objections petitioner elects to file, he may address whether a certificate of

19  appealability should issue in the event he files an appeal of the judgment in this case.  <u>See</u> Rule

20  11, Federal Rules Governing Section 2254 Cases (the district court must issue or deny a

21  certificate of appealability when it enters a final order adverse to the applicant).

22  DATED: May 14, 2013.

23

24                                                        _____

25  DAD:11                                             DALE A. DROZD
    dion3362.157                                      UNITED STATES MAGISTRATE JUDGE

26

                                                        25